IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| NOVA CASUALTY COMPANY, | ) CIVIL NO. 21-00374 LEK-WRP |
| | ) |
| Plaintiff, | ) FINDINGS AND |
| | ) RECOMMENDATION TO GRANT |
| vs. | ) PLAINTIFF'S MOTION FOR |
| | ) DEFAULT JUDGMENT |
| RAY NORTON, ET AL., | ) |
| | ) |
| Defendants. | ) |
| | ) |
| | ) |
| | ) |
| | ) |

FINDINGS AND RECOMMENDATION TO GRANT PLAINTIFF'S MOTION
FOR DEFAULT JUDGMENT

Before the Court is Plaintiff Nova Casualty Company's Motion for Entry of Default Judgment against Defendants Ray Norton dba C Connary Construction and Chad L. Connary (Motion). See ECF No. 21. The Court found the Motion suitable for disposition without a hearing pursuant to Rule 7.1(c) of the Local Rules of Practice of the United States District Court for the District of Hawaii. See ECF No. 22. The Court FINDS AND RECOMMENDS that Plaintiff's Motion be GRANTED.[1]

---

[1] Within fourteen days after a party is served with the Findings and Recommendation, pursuant to 28 U.S.C. § 636(b)(1), a party may file written objections in the United States District Court. A party must file any objections

BACKGROUND

According to the Complaint, Defendant Ray Norton (Norton) is an individual contractor who had a Hawaiʻi contractor's license in 2004. See ECF No. 1 ¶ 2. Norton, doing business as C Connary Construction (CCC) entered into a subcontract with a general contractor, Bodell Construction Company, to provide labor and materials for work on a residential condominium complex (Alii Cove at Honl's Beach) in Kailua-Kona, Hawaiʻi in 2004. See id.

In 2015, the Association of Apartment Owners of Alii Cove (AOAO) filed a Complaint in Hawaiʻi state court against Sunstone Realty Partners X LLC (Sunstone), the developer of the project (the Underlying Lawsuit). See id. ¶ 7. In the Underlying Lawsuit, the AOAO brought claims against Sunstone stemming from the allegation that embedded hurricane straps had corroded and failed because they were improperly installed. See id. ¶¶ 7-8. The AOAO's claims included those for products liability, breach of implied warranty, breach of express warranty, negligence, and unfair business practices under Haw. Rev. Stat. § 480. See id. In subsequent amended pleadings, the AOAO detailed how Sunstone had allegedly installed the embedded straps in the units instead of bolting the house frames to their foundations and that the embedded straps were defective, have

---

within the fourteen-day period to preserve appellate review of the Findings and Recommendation.

damaged units, are prone to corrosion, are in violation of Hawaii's building code, render the units unsafe, and must be replaced. See id. In another amended pleading, the AOAO further alleged that, due to the alleged faulty, defective and dangerous design of the condominiums, the embedded straps have or will become corroded and lose their ability to tie the structural elements of the units to their foundations, causing the AOAO and its members to face a significant risk, including that the units will suffer significant structural damage and could be completely destroyed if a hurricane or strong windstorm strikes the condominiums. See id. ¶ 9.

Sunstone, in turn, filed a third-party complaint against the general contractor, Bodell, among others. See id. ¶ 10. Sunstone alleged that, if it were found liable to the AOAO, it would be entitled to indemnity, contribution, and reimbursement from Bodell, further alleging that Bodell oversaw the installation and/or specification and/or approval of the embedded hurricane straps used in all units. See id.

Bodell, in turn, filed a fourth-party complaint against various subcontractors, including "Ray Norton dba C Connary Construction" (hereinafter referred to as CCC). See id. ¶ 11. The claims against CCC were based on a 2004 subcontract agreement between the two, wherein CCC was to provide labor and materials for certain framing work, including the installation of firewalls, windows, doors, siding, and other work. See id. Bodell alleged that CCC had expressly

3

and/or impliedly warranted that its work products or work incorporated into the project would be free of defect or deficiencies. See id. ¶ 12. Bodell also alleged that CCC agreed that all work would be completed in strict accordance with the defined contract documents, including as prepared by the project architect, and that it agreed to be bound to Bodell in the same manner and the same extent as Bodell was bound to Sunstone. See id. ¶ 13. Bodell further alleged that CCC had agreed to indemnify, defend, and hold harmless Bodell and Sunstone against all damages, expenses, costs, and attorney's fees incurred on account of any breach of any subcontract agreement. See id. ¶ 14. The fourth-party complaint also asserts that, to the extent the AOAO or Sunstone was injured as alleged, it was caused by CCC, and Bodell is not liable, and entitled to a defense and indemnification. See id. ¶¶ 15-18. Another subcontractor named in Bodell's fourth-party complaint filed crossclaims against CCC and all other fourth-party defendants. See id. ¶ 19.

    Plaintiff had previously issued a Contractor Special Insurance Policy (the policy), with Defendant Chad Connary and CCC listed as the named insureds on the policy. See id. ¶¶ 20, 28. CCC tendered its defense of the claims in the Underlying Lawsuit to Plaintiff under that policy, which is providing a defense to CCC subject to a reservation of rights. See id. ¶ 24. Plaintiff alleges that CCC provided work on the project, pursuant to its subcontract agreement with Bodell, and provided labor and materials, including the installation of framing of windows and exterior doors and firewalls. See id. ¶ 26. Plaintiff further alleges CCC ceased

4

work on the project without completing all work under the subcontract agreement. See id. ¶ 27. Plaintiff contends that the AOAO's claims in the Underlying Lawsuit are construction defect claims arising out of the alleged improper use and installation of galvanized hurricane straps and that the damages alleged are based on assertions that the hurricane straps have corroded or will corrode or have failed or will fail, which may prove dangerous if a hurricane or high winds strike the condominiums. See id. ¶ 29.

Plaintiff therefore brings a claim (Count I) contending that it has no duty to defend or indemnify CCC with respect to claims alleged for construction defects in the Underlying Lawsuit because those claims are not covered under the policy. See id. ¶¶ 30-36. Plaintiff also brings a claim (Count II) contending it has no duty to defend or indemnify CCC as to any claim in the Underlying Lawsuit because of certain exclusions in the relevant policy. See id. ¶¶ 37-46. Plaintiff brings an additional claim (Count III) contending that claims in the fourth-party complaint are not covered under the policy. See id. ¶¶ 47-49. Finally, Plaintiff brings a claim (Count IV) for declaratory relief seeking a determination that Bodell's fourth-party Complaint claims against CCC (derived from the AOAO's complaint against Sunstone and Sunstone's third-party complaint against Bodell in the Underlying Lawsuit) are not covered claims and/or are excluded from coverage under the policy and that Plaintiff has no duty to defend or indemnify Defendants with respect to the Underlying Lawsuit. See id. ¶¶ 50-54.

5

The Clerk entered default against Defendants Connary and Norton, pursuant to Rule 55(a) of the Federal Rules of Civil Procedure, on November 8, 2021 and December 1, 2021, respectively. See ECF Nos. 16, 19. This Motion followed.

## DISCUSSION

Default judgment may be entered if the defendant has defaulted by failing to appear and the plaintiff's claim is for a "sum certain or for a sum which can by computation be made certain[.]" Fed. R. Civ. P. 55(b)(1), (2). The granting or denial of a motion for default judgment is within the discretion of the court. Haw. Carpenters' Trust Funds v. Stone, 794 F.2d 508, 511-12 (9th Cir. 1986). Default judgments are ordinarily disfavored, and cases should be decided on their merits if reasonably possible. Eitel v. McCool, 782 F.2d 1470, 1472 (9th Cir. 1986).

### A. Jurisdiction

Before considering the merits of default judgment, the Court has an affirmative obligation to determine whether it has subject matter jurisdiction over this action and personal jurisdiction over Defendants. See In re Tuli, 172 F.3d 707, 712 (9th Cir. 1999) ("To avoid entering a default judgment that can later be successfully attacked as void, a court should determine whether it has the power, i.e., the jurisdiction, to enter the judgment in the first place.").

Here, the Court has subject matter jurisdiction based on diversity

jurisdiction because there is complete diversity as between Plaintiff and Defendants, see ECF No. 1 ¶¶ 1-3, and because Plaintiff seeks declaratory relief based on an insurance policy that carries a limit of $1,000,000 where the claims in the underlying lawsuit seek substantial damages, fees, costs, and interest, see id. ¶ 4.  See 28 U.S.C. § 1332.

The Court has personal jurisdiction over Defendant Norton because Plaintiff alleges Norton is a contractor who, doing business as CCC, entered into a subcontract to provide labor and materials for construction work in Kailua-Kona, and this suit arises out of that work.  See ECF No. 1 ¶ 2.  The Court has personal jurisdiction over Defendant Connary because Plaintiff alleges he is listed as one of the named insured (along with CCC) for the policy at issue and under which the defense of claims in the Underlying Lawsuit (pending in Hawai'i state court and related to conduct that occurred in Hawai'i) was tendered to Plaintiff.  See id. ¶¶ 24, 28.  Lastly, the Court finds that both Defendants were properly served.  See ECF Nos. 11, 13, 14; see also Fed. R. Civ. P. 4(e)(2).

### B. Default Judgment Factors

Following a determination that jurisdiction is proper, the Court must consider whether default judgment is appropriate.  The court should consider the following factors in deciding whether to grant a motion for default judgment:

(1) the possibility of prejudice to the plaintiff;
(2) the merits of plaintiff's substantive claim;
(3) the sufficiency of the complaint;

7

      (4)   the sum of money at stake in the action;
      (5)   the possibility of a dispute concerning material facts;
      (6)   whether the default was due to excusable neglect; and
      (7)   the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

See Eitel, 782 F.2d at 1471-72 (the Eitel factors).

On default, "the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." TeleVideo Sys., Inc. v. Heidenthal, 826 F.2d 915, 917-18 (9th Cir. 1987) (quoting Geddes v. United Fin. Grp., 559 F.2d 557, 560 (9th Cir. 1977)). The allegations as to liability are deemed true, but the plaintiff must establish the relief to which it is entitled. See Fair Hous. of Marin v. Combs, 285 F.3d 899, 906 (9th Cir. 2002). Also, "necessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default." Cripps v. Life Ins. Co. of N. Am., 980 F.2d 1261, 1267 (9th Cir. 1992) (citing Danning v. Lavine, 572 F.2d 1386, 1388 (9th Cir. 1978)).

### 1.    The Possibility of Prejudice to Plaintiff

The first factor considers whether Plaintiff would suffer prejudice if default judgment is not entered. See PepsiCo, Inc. v. Cal. Sec. Cans, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002). Here, absent entry of default judgment, Plaintiff would be without any other recourse for recovery. Accordingly, the first Eitel factor favors default judgment.

8

### 2. Merits of Plaintiff's Substantive Claims

For purposes of liability, the factual allegations in the complaint are taken as true on default. See TeleVideo Sys., Inc., 826 F.2d at 917-18; Fair Hous. of Marin, 285 F.3d at 906. Here, the allegations in Plaintiff's Complaint, taken as true, establish that Plaintiff is entitled to default judgment against Defendants. Plaintiff generally seeks a declaration that, under the terms of the policy, it has no duty to defend or indemnify Defendants with regard to the Underlying Lawsuit. The Court briefly summarizes the applicable doctrines of insurance law before turning to Plaintiff's specific claims here.

### a. Substantive Insurance Law

In this diversity action, the Court applies state substantive law. See Mason & Dixon Intermodal, Inc. v. Lapmaster Int'l LLC, 632 F.3d 1056, 1060 (9th Cir. 2011). Under Hawai'i law, "insurance policies are subject to the general rules of contract construction; the terms of the policy should be interpreted according to their plain, ordinary, and accepted sense in common speech unless it appears from the policy that a different meaning is intended." Guajardo v. AIG Haw. Ins. Co., 118 Haw. 196, 202, 187 P.3d 580, 586 (2008). As long as an insurance "policy is clear and unambiguous, and not in contravention of statutory inhibitions or public policy, the insurance policy should be enforced on its terms." Foote v. Royal Ins. Co. of Am., 88 Haw. 122, 125, 962 P.2d 1004, 1007 (App. 1998). Courts must therefore respect the plain terms of a policy and must not create ambiguity where

9

none exists. See Allstate Ins. Co. v. Pruett, 118 Haw. 174, 182, 186 P.3d 609, 617 (2008). Still, because insurance policies are contracts of adhesion, "they must be construed liberally in favor of the insured and any ambiguities must be resolved against the insurer." Guajardo, 118 Haw. at 202, 187 P.3d at 586.

Under Hawai'i law, the duty to defend is broad, arising "whenever there is a potential for indemnification liability of the insurer to the insured." Hawaiian Holiday Macadamia Nut Co. v. Indus. Indem. Co., 76 Haw. 166, 169, 872 P.2d 230, 233 (1994). It "exists irrespective of whether the insurer is ultimately found not liable to the insured and is based on the possibility for coverage, even if remote, determined at the time suit is filed." Burlington Ins. Co. v. Oceanic Design & Constr., Inc., 383 F.3d 940, 944 (9th Cir. 2004) (citing Commerce & Indus. Ins. Co. v. Bank of Haw., 73 Haw. 322, 832 P.2d 733, 736 (1992)). Thus, "where a suit raises a potential for indemnification liability of the insurer to the insured, the insurer has a duty to accept the defense of the entire suit even though other claims of the complaint fall outside the policy's coverage." Hawaiian Holiday, 76 Haw. at 169, 872 P.2d at 233 (citation omitted). Adhering to the "complaint allegation rule," Hawai'i focuses "on the alleged claims and facts." Burlington, 383 F.3d at 944 (citing Pancakes of Haw., Inc. v. Pomare Props. Corp., 85 Haw. 286, 944 P.2d 83, 88 (App. 1997)). Because the duty to defend "is limited to situations where the pleadings have alleged claims for relief which fall within the terms for coverage of the insurance contract," an insurer has

10

no obligation to defend when "pleadings fail to allege any basis for recovery within the coverage clause." Burlington, 383 F.3d at 944-45 (quoting Hawaiian Holiday, 76 Haw. at 169, 872 P.2d at 233).

As to the duty to indemnify, an "insurer owes a duty to indemnify the insured for any loss or injury which comes within the coverage provisions of the policy, provided it is not removed from coverage by a policy exclusion." State Farm Fire & Cas. Co. v. GP W., Inc., 190 F. Supp. 3d 1003, 1014 (D. Haw. 2016) (citation omitted).

### b. Plaintiff's Claims

With this background in mind, the Court turns to Plaintiff's claims in the present suit. Plaintiff first alleges it has no duty to defend or indemnify under the policy with respect to claims alleged for construction defects in the Underlying Lawsuit because claims for "property damage" must be caused by an "occurrence" that must occur during the policy period. ECF No. 1 ¶ 31. The policy defines "property damage" as:

> a. physical injury or destruction of tangible property; or
>
> b. the loss of use of tangible property whether or not it is physically damaged. Loss of use is deemed to occur at the time of the 'occurrence' that caused it.

Id. ¶ 22. "Occurrence," in turn, is defined as "an accident and includes repeated exposure to similar conditions." See id. Further, claims for "property damage" are only covered if the property damage occurs during the policy period, which

11

Plaintiff alleges here was 9/28/2003 through 9/28/2004.  See id. ¶¶ 20, 22, 35.

Plaintiff alleges that the "property damage" alleged by the AOAO in the Underlying Lawsuit—related to the use of defective hurricane straps and defective installation of hurricane straps—was not an "occurrence" as defined in the policy, nor is there any allegation that any accident or "occurrence" took place during the policy period, particularly because the AOAO's allegations focus on future risk of failure in the event of a hurricane or high windstorm.  See id.  ¶¶ 34-35; ECF No. 21 at 20.

In its Motion, Plaintiff cites to authority from this District concluding that, as early as 2002 under Hawai'i law, a construction defect did not constitute an "occurrence"—where that term was defined substantially similarly as it is under the policy here, and the underlying action alleged the defendant had not fulfilled its obligations under a construction contract and that the construction was "riddled with defects"—and thus that breach of contract claims and derivative tort claims based on alleged construction defects were not covered.  See Evanston Ins. Co. v. Nagano, 891 F. Supp. 2d 1179, 1191-94 (D. Haw. 2012); see also Arrowood Surplus Lines Ins. Co. v. Paul Ryan Assocs., Inc., 2014 WL 12597419, at *6-7 (D. Haw. Oct. 31, 2014).  Plaintiff further notes, and this Court agrees, that although the applicable policy date in Evanston predates the applicable policy here (issued for the period 9/28/2003 to 9/28/2004), the reasoning in Evanston applies with regard to applicable Hawai'i insurance law at the time the policy was issued here.

12

See ECF No. 21-3 at 23; see also State Farm Fire & Cas. Co. v. Vogelgesang, 834 F. Supp. 2d 1026, 1037-38 (D. Haw. 2011). Based on this, the Court finds that Plaintiff's allegations, taken as true, demonstrate it had no duty to defend or indemnify Defendants in the Underlying Lawsuit because it involves breach of contract claims and derivative tort or statutory claims based on the alleged construction defects detailed above.

Alternatively, Plaintiff contends that, even if any claim in the Underlying Lawsuit were covered under the policy at issue here, certain exclusions apply that would exclude those claims—meaning Plaintiff nonetheless has no duty to defend or indemnify Defendants. Plaintiff alleges that the policy contains specific exclusions that apply when the property damage claims relate to or arise out of the work performed or products provided by the insured on the subject property. See ECF No. 1 ¶ 38.

Under the policy, "Your Work" means:

(a) work or operations performed by "you" or on "your" behalf;

(b) materials, parts, and equipment supplied for your work or operations;

(c) written warranties or representations made at any time regarding quality, fitness, durability or performance of any of the foregoing; and

(d) providing or failing to provide warnings or instructions.

Id. ¶ 39. In the Complaint, Plaintiff alleges specific exclusions apply because the property damage claims here involve property on which work is being performed

13

by the insured,[1] or damage to property that must be repaired or replaced because of faults or defects in the work performed,[2] or damage to property that arises out of products or their parts,[3] or damage to property that has been impaired that arises out of delay or failure to perform a contract[4]. Based on the allegations in the Underlying Lawsuit, these exclusions provide an alternate reason why Plaintiff has no duty to defend or indemnify claims in the Underlying Lawsuit. See Sturla, Inc.

---

[1] Exclusion No. 5 states: "'We' do not pay for 'property damage' to that specific part of real property on which work is being performed by: a. 'you' or b. a contractor or subcontractor working directly on 'your' behalf, if the property damage arises out of such work." ECF No. 1 ¶ 40.

[2] Exclusion No. 6 states that: " 'We' do not pay for 'property damage' to that specific part of any property that must be restored, repaired, or replaced because of faults in 'your work'." Id. ¶ 41. Exclusion No. 10 states that: " 'We' do not pay for any loss or expense incurred by 'you' or anyone else arising out of the loss of use, disposal, withdrawal, recall, inspection, repair, replacement, adjustment, or removal of (including any expenses involved in the withdrawal or recall) or 'your work', 'products', or 'impaired property'. This applies when the loss of use, disposal, withdrawal, recall, inspection, repair, replacement, adjustment or removal was because of a known or suspected defect, deficiency, or unsafe condition." Id. ¶ 45.

[3] Exclusion No. 7 states that: "'We' do not pay for 'property damage' to products if the damage arises out of the 'products' or their parts." Id. ¶ 42. Exclusion No. 8 states that: "'We' do not pay for 'property damage' to 'your work' if the 'property damage' arises out of 'your work' and is included in the products/complete work hazard." Id. ¶ 43.

[4] Exclusion No. 9 states that: "'We' do not pay for 'property damage' to property that has been physically injured or destroyed, or to 'impaired property', that arises out of: a. a delay or failure to perform a contract by 'you' or one acting on your behalf; or b. a defect, deficiency, inadequacy, or unsafe condition in 'your work' or 'products'. . .[.]" Id. ¶ 44.

14

v. Fireman's Fund Ins. Co., 67 Haw. 203, 210 & n.6, 684 P.2d 960, 964-65 & n.6 (1984).

After considering the allegations in the Complaint, this second factor weighs in favor of default judgment because the allegations, taken as true, are sufficient to establish Plaintiff's claims.

### 3. Sufficiency of the Complaint

The allegations in the Complaint are sufficiently pled and supported by the documents filed with the Complaint and the Motion. The Court finds that the sufficiency of the Complaint weighs in favor of default judgment.

### 4. Sum of Money at Stake

The Court "must consider the amount of money at stake in relation to the seriousness of Defendant's conduct." PepsiCo, Inc., 238 F. Supp. 2d at 1177 (citing Eitel, 782 F.2d at 1472). Here, Plaintiff seeks only declaratory relief, and so this factor too weighs in favor of granting default judgment.

### 5. Possibility of Dispute Concerning Material Facts

The well-pled factual allegations of the Complaint, except those relating to the amount of damages, will be taken as true. See TeleVideo Sys., Inc., 826 F.2d at 917-18. Defendants have been given a fair opportunity to defend this action and have not done so. Because no dispute has been raised regarding Plaintiff's material factual allegations, this factor favors default judgment.

### 6. Whether Default was Due to Excusable Neglect

15

The Court finds that Defendants' default was not the result of excusable neglect, but rather due to their conscious and willful decision not to defend this action. As the Court found previously, Defendants were properly served. Defendants failed to defend this action and default was entered against them. This factor too favors default judgment.

### 7. Policy Favoring Decisions on the Merits

Defendants' default renders a decision on the merits impractical, if not impossible. Under Rule 55, "termination of a case before hearing the merits is allowed whenever a defendant fails to defend an action." PepsiCo., Inc., 238 F. Supp. 2d at 1177; see also Philip Morris USA, Inc. v. Castworld Prods., Inc., 219 F.R.D. 494, 501 (C.D. Cal. 2003) ("the mere existence of Fed. R. Civ. P. 55(b) indicates that the seventh Eitel factor is not alone dispositive"). Here, Defendants have failed to defend this action and have consequently rendered adjudication on the merits before this Court impracticable. This factor does not preclude the Court from entering default judgment against Defendants.

### 8. Totality of Eitel Factors

Accordingly, the Court finds that the totality of the Eitel factors weighs in favor of entering default judgment against Defendants.

### C. Remedies

Although Defendants' default establishes liability, it does not establish all relief to which Plaintiff is entitled. See Fair Hous. of Marin, 285 F.3d

16

at 906. Plaintiff must provide evidence to support its requested relief and that relief "must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c). Based on the discussion above, and the relief requested in the Complaint, see ECF No. 1 at 23-24, the Court finds and recommends that Plaintiff be granted the declaratory relief requested, i.e., a declaration that it has no duty to defend or indemnify Defendants in the Underlying Lawsuit.

## CONCLUSION

The Court FINDS and RECOMMENDS that Plaintiff's Motion for Default Judgment against Defendants be GRANTED.

IT IS SO FOUND AND RECOMMENDED.

DATED AT HONOLULU, HAWAII, FEBRUARY 8, 2022.



Wes Reber Porter
United States Magistrate Judge

**NOVA CASUALTY COMPANY v. NORTON, ET AL.; CIVIL NO. 21-00374 LEK-WRP; FINDINGS AND RECOMMENDATION TO GRANT PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT**